# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| MAURICE CAMPBELL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case number 1:07cv0021TCM |
| CHRISTY CLINTON, et al, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This 42 U.S.C. § 1983 action is before the Court on the motion of the four remaining defendants,[1] Christy Clinton ("Clinton"), C. Dowdy ("Dowdy"), Steve Long ("Long"), and Troy Steele ("Steele"), for summary judgment. [Doc. 51] Plaintiff, Maurice Campbell ("Plaintiff"), has not responded to the motion.[2]

## Background

In his amended verified complaint, Plaintiff alleges that his First Amendment rights and his Eighth Amendment right to be free of cruel and unusual punishment were violated by the four Defendants[3] when he was incarcerated at the Southeast Correctional Center

---

[1]Two defendants, Laura Vance and Steve Dominque, were dismissed by the Honorable Stephen N. Limbaugh, Senior United States District Court Judge for the Eastern District of Missouri, now retired, after Plaintiff failed to provide an address at which they could be served.

[2]The motion was filed on July 2, 2009. In addition to there being no response filed, there has been no request for an extension of time within which to file one. Indeed, there has been no activity in the file after the filing of the motion for summary judgment.

[3]Claims against the four defendants in their official capacities were earlier dismissed.

("SECC"). (Compl.[4] at 6.) Specifically, he was "exposed to extremely cold conditions" first when being placed in solitary confinement based on a "bogus" conduct violation[5] and, second, when being placed in administrative segregation after refusing to accept "a very dangerous homosexual" as a cellmate. (Id.) This situation began in December 2005 and lasted throughout that winter. (Id.) The "cold cell" he was placed in, 2B-110, after refusing to accept the dangerous cellmate was, according to his information and belief, at least 30 degrees colder than the rest of the facility. (Id. at 6B.) He was also subjected to noise pollution and dust when in the cell. (Id.) The cell is used as a sensory deprivation chamber. (Id.)

Plaintiff complained of his placement in the cold cell to Clinton, a classification caseworker assistant, explaining that he suffered from severe allergies and chronic rheumatoid arthritis. (Id.) She refused to help him, refused to honor his declaration of a medical emergency, as provided for in SECC policy, and refused to explain to him why he had been transferred to the cold cell and why he had not been given a seasonal change of clothing. (Id. at 6C.)

Plaintiff's complaint was forwarded to Dowdy, a functional unit manager, who ignored the facts and supported Clinton. (Id.) Long, the assistant director of the Division of Adult Institutions, also ignored Plaintiff's suffering. (Id. at 6D.) Steele is the superintendent of SECC. (Id. at 6B.)

---

[4]References to "Compl." are to the amended complaint.

[5]Plaintiff later alleges that the placement was in retaliation for his complaints against the staff about abuse and the conditions of confinement. (Id. at 6B.)

As a consequence of Defendants' actions, Plaintiff's allergies and arthritis worsened, causing him pain and suffering. (Id. at 6E.) He requests equitable and monetary relief, including compensatory and punitive damages. (Id. at 6G.)

Plaintiff's deposition testimony and the authenticated exhibits clarify and add definition to his allegations.

He was removed from the general housing population on December 9, 2005, and placed in temporary administrative segregation after being given a conduct violation for possessing dangerous contraband. (Pl. Dep., Defs. Ex A, at 14, 16; Defs. Stip.[6] ¶¶ 9, 11-12.) The contraband was a 9 ½ inch steel rod found in a desk in the cell Plaintiff shared with another inmate. (Defs. E. at [1], [2], [4]; Defs. Stip. ¶ 9.) Neither Plaintiff nor his cellmate claimed ownership. (Defs. Ex. E at [1].) The desk, however, was in the area of the cell assigned to Plaintiff. (Id.) The conduct violation was issued by correctional officer Bryan Hoskins. (Defs. Ex. E at [1]; Defs. Stip. 9.) Plaintiff was found guilty of the violation after a hearing. (Defs. Ex. E at [1].) The hearing officer, the officer recommending his transfer to administrative segregation, and the officer approving the recommendation are not defendants. (See Id.)

---

[6]"Stip." refers to statements of uncontroverted material facts submitted by Defendants in support of their motion for summary judgment and not denied by Plaintiff. Local Rule 4.01(E) of the Eastern District of Missouri requires a party opposing a motion for summary judgment to "include a statement of material facts as to which the party contends a genuine issue exists." "All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D. Mo. L.R. 4.01(E). Although proceeding pro se, Plaintiff is not excused from complying with the Local Rules. Plaintiff has not controverted any of the alleged facts submitted by Defendants. Indeed, he has not responded at all to the motion for summary judgment. Additionally, the Court has reviewed the exhibits submitted in support of the cited facts and find support therein.

On January 27, 2006, he was told he would have a cellmate, someone Plaintiff describes as a "known homosexual." (Defs. Ex. A at 19.) He refused. (Id. at 22.) He had heard rumors about the fellow harming other inmates and knew he had a "bad reputation." (Id.) He had never met the fellow, nor was he on Plaintiff's enemy list. (Id. at 23, 29; Defs. Stip. ¶ 17-18.) Plaintiff thought, however, that the fellow should have been added to the list after Plaintiff refused to cell with him. (Defs. Ex. A at 29.) When told to back to the door of the cell so he could be placed in handcuffs, he refused. (Id. at 24-25.) He knew this refusal was a conduct violation. (Id. at 26.) After five to ten minutes, he did as ordered and was removed from the cell. (Id.)

Plaintiff was then placed in cell 2B-110. (Id. at 30.) This is the cell he refers to as the "cold cell." (Id.) The cell is at the end of the row and, in addition to a window in the metal door, has a window to the outside. (Id. at 31, 34.) The end cells are known to be "extra cold." (Id. at 34.) In the cold cell, he could sometimes see his breath, and frequently stayed under the covers to try to keep warm. (Id. at 41.) When moved, he took with him a short-sleeved jumpsuit, two or three pairs of boxer shorts, T-shirts, socks, a pillow case, two sheets, and one blanket. (Id. at 37, 38.) He was later given a second blanket. (Id. at 37-38.)

Plaintiff did not know what the temperature was in his cold cell. (Id. at 44.) He did not have a thermometer or other access to any reading of the temperature. (Id. at 45.)

The cold he was exposed to when housed in 2B-110 aggravated his preexisting arthritis and allergies, causing him a runny nose, excessive phlegm, and pain his arms and legs and, occasionally, his hands and head. (Id. at 45, 50-51.) He explained this to Clinton. (Id. at 45, 47.)

The temperature in the cell warmed up in October or November 2006. (Id. at 53.) He was transferred out on November 27, 2006. (Defs. Ex. D at 3.)

Long, Steele, Dowdy, and Clinton were not present when Plaintiff refused to allow the proposed cellmate or when he was moved to the cold cell. (Defs. Ex. A at 36-37; Defs. Stip. ¶ 29-36; Defs. Ex. B ¶ 7-8; Defs. Ex. C ¶ 7-8.) Steele was involved in the complained-of events because he was the superintendent of SECC. (Defs. Ex. A at 54-55.) Plaintiff never spoke with him. (Id. at 55.) Long was only involved due to his supervisory position in the Department of Corrections ("DOC") and, perhaps, due to a possible response to a grievance. (Id. at 55-56.) Dowdy was involved because, as functional unit manager, she was the supervisor of the housing unit, she might have signed off on some of the paperwork, and she might have heard some of the complaints about the freezing cold when making her rounds in the housing unit. (Id. at 56-57, 64.) He could not recall any instances where she signed off on his paperwork or heard his complaints. (Id. at 57.) Clinton, and other unidentified people, was deliberately indifferent to his serious medical needs. (Id. at 60.) She was also named as a defendant "because of her position as investigator, interviewer and just general work." (Id. at 64.)

When in administrative segregation, in either cell, Plaintiff saw a nurse on a daily basis. (Id. at 61; Defs. Stip. ¶ 50.) He was given medication for his allergies and his arthritis. (Defs. Ex. A at 62; Defs. Stip. ¶ 60.) Between December 9, 2005, and July 1, 2006, Plaintiff was seen 192 times by a nurse during daily rounds and submitted 21 medical service request forms ("MSRs"). (Defs. Stip. ¶¶ 51, 53.) Neither the records nor the MSRs refer to chronic rheumatoid arthritis or include complaints about the cold temperature in

either the first or second administrative segregation cell. (Id. ¶ 55-57.) They did include complaints of a runny nose, excess phlegm, and "'burning, reddish, itchy eyes.'" (Id. ¶ 58.) Plaintiff was seen by a doctor on February 28, 2006, for complaints of allergies and a runny nose that were worse during the winter. (Id. ¶ 64.) The doctor diagnosed rhinitis and prescribed medication. (Id.) Asked in his deposition if there were any medical issues that he had that were from the cold cell and were not cared for by the nurses, Plaintiff replied, "Not that I recall." (Defs. Ex. A at 62.)

Asked in his deposition about his noise pollution claim, Plaintiff explained that he was referring to all the noise in prison. (Id. at 40.)

Steve Shipley is a plant maintenance engineer at SECC, and has been since 2002. (Defs. Ex. H ¶ 1-2.) He avers that "[t]he climate control system at [SECC] is a computer-controlled heating, ventilating, and air conditioning system ('HVAC')." (Id. ¶ 4.) This system was properly functioning in the administrative segregation housing throughout 2005 and 2006. (Id. ¶ 6-7.) The temperature setting during the winter months is 75 degrees Fahrenheit and during the summer is 73 degrees. (Id. ¶ 10.) These settings comply with standards set forth by the American Society of Heating, Refrigerating and Air Conditioning Engineers ("ASHRAE").[7] (Id. ¶ 9.) Neither Dowdy nor Clinton had any control over the temperature in the administrative segregation housing unit. (Defs. Ex. B ¶ 14; Defs. Ex. C ¶ 9.)

---

[7]With his response to Defendants' motion to dismiss, Plaintiff submitted a copy of an article titled "Indoor Environmental Quality (IEQ)." (See Doc. 20, Ex. A.) This article explains that IEQ refers to the quality of air in an office environment. It does not set forth minimum temperature requirements or otherwise establish any standards for IEQ.

Defendants move for summary judgment on the grounds that Plaintiff's § 1983 complaints lack merit. For the reasons set forth below, the Court agrees.

## Discussion

"'Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" **Loeb v. Best Buy Co.**, 537 F.3d 867, 871 (8th Cir. 2008) (quoting Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007)). When making this determination, the Court views the evidence, and any reasonable inferences therefrom, in the light most favorable to Plaintiff. **Id.** In opposing a properly-supported motion for summary judgment, Plaintiff may not "merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." **Bass v. SBC Commc'ns, Inc.**, 418 F.3d 870, 872-73 (8th Cir. 2005). See also **Norman v. Schuetzle**, 585 F.3d 1097, 1103 (8th Cir. 2009) ("[W]hile [the Court] [is] required to make all reasonable inferences in favor of the non-moving party, [it] doe[es] not resort to speculation."). The allegations made by Plaintiff in his verified complaint, see 28 U.S.C. § 1746, will be treated as if made in an affidavit. **Roberson v. Hayti Police Dep't**, 241 F.3d 992, 995 (8th Cir. 2001).

Those allegations arguably describe constitutional violations in retaliation for an exercise of First Amendment rights, in the conditions of his confinement, and in a deliberate indifference to his medical needs.

<u>First Amendment Rights.</u> Plaintiff alleges in his verified complaint that he was transferred to a cold cell in administrative segregation based on a "bogus" conduct violation and in retaliation for his complaints about the SECC staff. In his deposition testimony,

however, the cold cell is the one he was housed in after refusing to accept a homosexual cellmate.

Liberally construing this first transfer claim, see **Estelle v. Gamble**, 429 U.S. 97, 106 (1976), as a First Amendment claim, it is not supported by the evidence.

"'Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason.'" **Nei v. Dooley**, 372 F.3d 1003, 1007 (8th Cir. 2004) (quoting Cody v. Weber, 256 F.3d 764, 770-71 (8th Cir. 2001)). "But an inmate's retaliation claim fails 'if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule.'" **Bandy-Bey v. Crist**, 578 F.3d 763, 766 (8th Cir. 2009) (quoting Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008)). "'Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation.'" **Id.** (quoting Hartsfield, 511 F.3d at 829). "'[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker.'" **Id.** (quoting Hartsfield, 511 F.3d at 831) (alteration in original).

Plaintiff was transferred to temporary administrative segregation after receiving a conduct violation for possession of contraband. The conduct violation report and disciplinary action report provide some evidence to support the violation.

Additionally, none of the officers involved in the issuance of the violation and the subsequent transfer have been named as a defendant, including the officers who found him guilty of the violation and ordered his transfer. Causation is a necessary element of a prima

facie case of retaliation. See **Hughes v. Stottlemyre**, 454 F.3d 791, 797 (8th Cir. 2006); accord **Hart v. City of Little Rock**, 432 F.3d 801, 804 (8th Cir. 2005). "'[C]ausation can be established by direct personal participation in the deprivation or by participation setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injuries on third parties.'" **Hughes**, 454 F.3d at 798 (quoting Darnell v. Ford, 903 F.2d 556, 562 (8th Cir. 1990)). There has been no showing that any of the four defendants participated in the alleged adverse actions or that they participated in setting those actions in motion. See **Naucke v. City of Park Hills**, 284 F.3d 923, 928 (8th Cir. 2002) (affirming grant of summary judgment in § 1983 retaliation claim because plaintiff had failed to submit any evidence linking defendants to alleged retaliatory act).

Two of the defendants, Long and Steele, are alleged to have some supervisory responsibilities. "'[I]t is well settled[, however,] that § 1983 does not impose respondeat superior liability.'" **Hughes**, 454 F.3d at 798 (quoting Crawford v. Davis, 109 F.3d 1281, 1284 (8th Cir.1997)) (first alteration in original).

Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

Conditions of Confinement. Plaintiff further alleges that the extreme cold in the cell to which he was transferred in January 2006 was cruel and unusual punishment in violation of the Eighth Amendment.[8]

---

[8]Plaintiff alleged in his complaint that he was also subjected to noise pollution in violation of the Eighth Amendment. His subsequent deposition testimony clarifies that the alleged pollution was a consequence of being in prison. This allegation does not state a § 1983 claim. See **Rhodes v. Chapman**, 452 U.S. 337, 349 (1981) (The "Constitution does not mandate comfortable

- 9 -

"To establish that his conditions of confinement violated the Eighth Amendment, [Plaintiff ] must show that (1) the alleged deprivation is sufficiently serious that it denies 'the minimal civilized measure of life's necessities,' and (2) the prison officials were deliberately indifferent to 'an excessive risk to inmate health or safety.'" **Seltzer-Bey v. Delo**, 66 F.3d 961, 964 (8th Cir. 1995) (quoting Williams v. Delo, 49 F.3d 442, 445 (8th Cir.1995)); accord **Key v. McKinney**, 176 F.3d 1083, 1086 (8th Cir. 1999). As set forth below, Plaintiff has failed to show either.

"[H]umane conditions of confinement" include "adequate clothing, shelter, and medical care." **Farmer v. Brennan**, 511 U.S. 825, 832 (1994). "To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including 'the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold.'" **Flores v. O'Donnell**, 36 Fed.Appx. 204, 206-07 (7th Cir. 2002) (per curiam) (quoting Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997)). Plaintiff has not shown that the temperature of his cell was inadequate. The temperature complies with ASHRAE standards and was between 73 and 75 degrees Fahrenheit during the relevant period.[9] See **Soto v. Bertrand**, 328 Fed.Appx. 331, 333 (7th Cir. 2009) (per curiam) (allegation that defendants violated Eighth Amendment by subjecting prisoner to cold was unavailing given absence of any evidence that he was subjected to

---

prisons" nor that the prisons be "free of discomfort.").

[9]The Court notes that Plaintiff did not refute Shipley's averment as to the temperatures in the cell and did not have any means of measuring such on his own.

extreme cold); **Green v. Sec'y for Dep't of Corrections**, 212 Fed.Appx. 869, 872 (11th Cir. 2006) (per curiam) (rejecting inmate's Eighth Amendment claims based on cell temperature which, inter alia, complied with American Corrections Association standards). Even if, as alleged by Plaintiff, the location of the cell made it colder than other cells, Plaintiff had clothing and two blankets with which to combat any cold temperature in his cell. "[A] low cell temperature at night *combined with a failure* to issue blankets" was cited in **Wilson v. Seiter**, 501 U.S. 294, 304 (1991) (emphasis added), as an example of a condition of confinement which might violate the Eighth Amendment. Plaintiff, however, had blankets. See **Dixon**, 114 F.3d at 643 ("The question . . . is not simply whether the inmate had some alternative means of warmth, but whether the alternative was adequate to combat the cold."); **Strickler v. Waters**, 989 F.2d 1375, 1382 (4th Cir. 1993) (low cell temperatures combined with blankets did not violate Eighth Amendment); **Gutierrez v. Salas**, 211 Fed.Appx. 558, 559 (9th Cir. 2006) (per curiam) (rejecting Eighth Amendment claim based on being housed in cell that was allegedly too cold; defendants were aware of, and trying to fix, problem and inmates were offered extra blankets in interim).

Plaintiff alleges the temperature in his cell was so cold for so long that it aggravated his arthritis and allergies. His medical records fail to substantiate these allegations. Indeed, there is no indication in those records that he had arthritis and no evidence that he ever complained of cold temperatures in his cell. Moreover, there is evidence that he complained of allergy symptoms before his transfer to 2B-110 . See **Vasquez v. Frank**, 290 Fed.Appx. 927, 928 (7th Cir. 2008) (per curiam) (rejecting Eighth Amendment claim of being subjected

to excessive heat in cell absent any evidence that medical problems resulted from conditions of confinement).

In addition to the failings cited above, Plaintiff has failed to show that any of the four named defendants played any part in determining the temperature of the cells. See **Mayorga v. Missouri**, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations omitted); **Clark v. Long**, 255 F.3d 555, 559 (8th Cir. 2001) (plaintiff must prove that the defendant's unconstitutional action was the "cause in fact" of his injury to establish a violation of constitutional rights under § 1983); **Tilson v. Forest City Police Dep't**, 28 F.3d 802, 807 n.9 (8th Cir. 1994) (there can be no § 1983 relief without proof of causation).

"[C]onstitutional rights don't come and go with the weather," **Chandler v. Crosby**, 379 F.3d 1278, 1298 (11th Cir. 2004); however, Plaintiff has failed to show that the temperature in his cell violated his constitutional rights.

Deliberate Indifference to Serious Medical Needs.  Plaintiff also alleges that Defendants were indifferent to the pain he suffered as a result of the aggravation of his arthritis and allergies. "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban against cruel and unusual punishments." **Krout v. Goemmer**, 583 F.3d 557, 567 (8th Cir. 2009) (citing Farmer, 511 U.S. at 828). "To establish deliberate indifference, [Plaintiff] must show that [he] suffered from one or more objectively serious medical needs, and that the correctional officers acted with a sufficiently culpable state of mind, namely, that they actually knew of, but deliberately disregarded, [his] medical needs." **Id.** "Under this subjective prong, the evidence must show that the officers recognized that

a substantial risk of harm existed and knew that their conduct was inappropriate in light of that risk." **Id.** Accord **Gordon ex rel. Gordon v. Frank**, 454 F.3d 858, 862 (8th Cir. 2006).

Plaintiff has failed to satisfy either the objective or subjective prong of his claim. His medical records show, and his deposition testimony confirms, that he received medical care for all his medical needs during the months in question. Those records also show that the most serious of those needs were sinus and allergy problems. For these problems, he was given medication, following which his complaints ended for awhile.

The only Defendant that allegedly had any role to play in treating Plaintiff's medical needs was Clinton. There is no evidence, however, that she ignored any medical complaint of Plaintiff.

## Conclusion

The unrefuted evidence properly before the Court establishes that the four Defendants did not retaliate against Plaintiff for the exercise of any constitutional right and did not violate his Eighth Amendment rights.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment of defendants Christy Clinton, C. Dowdy, Steve Long, and Troy Steele for summary judgment is **GRANTED**. [Doc. 51]

An appropriate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of December, 2009.